## Mort Company *v.* Paul, Appellant.

Argued September 26, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Frederick B. Smillie,* with him *Paul A. Davis, 4th,* and *Smillie, Bean & Scirica,* for appellant.

*Bernard M. Borish,* with him *Maxwell Strawbridge* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY DITHRICH, J., November 14, 1950:

This action to recover the balance due on a contract for the installation of storm windows on defendant's premises is defended on the ground that plaintiff failed to perform the work in accordance with the contract. In more specific terms, the defense is that the work was not done in a good and workmanlike manner.

The jury found for plaintiff in the full amount of its claim. Defendant then moved for judgment n.o.v. and for a new trial, alleging that the trial judge committed fundamental error in the charge, to which only a general exception was taken. From a denial of his motions he appeals, pressing, however, only the denial of the new trial motion.

Defendant bases his claim upon the following excerpts from the charge, both relating to the doctrine of substantial performance: (1) "A contract is not substantially performed if the contractor wilfully, carelessly or in bad faith fails to perform or leaves the work incomplete in material respects, or omits work that cannot be done by the owner except at great cost and

risk or is not capable of remedy." (2) "Did the plaintiff carelessly and intentionally install storm windows that were too small, filling in the crevices with strips and cutting down the window stops, so that it did not substantially perform the contract?"

The alleged error in these excerpts is readily apparent upon comparing them with several accepted statements of the rule. Cf. Restatement, Contracts, §§274 (1) and 275; *Sgarlat v. Griffith,* 349 Pa. 42, 36 A. 2d 330.

One of the earliest and best statements appears in *Danville Bridge Co. v. Pomroy & Colony,* 15 Pa. 151, 159: ". . . where a party, acting honestly, and intending to fulfil his contract, performs it substantially, but fails in some comparatively unimportant particulars, the other party will not be permitted to enjoy the fruits of such imperfect performance, without paying a fair compensation according to the contract, receiving a credit for any loss or inconvenience suffered. . . . Of course, the indulgence is not to be so stretched as to cover fraud, gross negligence, or obstinate and wilful refusal to fulfil the whole engagement, or even a voluntary and causeless abandonment of it." See also *Typhoon Air Conditioning Co., Inc., v. Fried,* 147 Pa. Superior Ct. 605, 24 A. 2d 926.

Under the Pennsylvania concept of the rule the presence or absence of good faith, i. e., whether the breach was willful or merely inadvertent, is extremely important. As Mr. Justice STERRETT stated in *Gillespie Tool Co. v. Wilson,* 123 Pa. 19, 26, 16 A. 36: "The equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimport-

ant omissions or defects. It is incumbent on him who invokes its protection to present a case in which there has been no wilful omission or departure from the terms of his contract." See also *Morgan v. Gamble,* 230 Pa. 165, 79 A. 410, and *Sgarlat v. Griffith,* supra.

The challenged language of the court below—the use of the words "wilfully, carelessly, intentionally or in bad faith"—indicates that the court was momentarily preoccupied with the good-faith aspect of the doctrine of substantial performance. Viewed in that light, it is not an incorrect statement of the law. In other words, there is no substantial performance *if* a contractor has willfully, carelessly, intentionally or in bad faith failed to perform the contract in material respects. Appellant would have this Court interpret the charge as saying that "a contract is not substantially performed only in the event that work is done in a poor manner, wilfully, carelessly, intentionally, or in bad faith." It would follow that a contractor could recover for a job done in a sloppy, unworkmanlike manner, provided only that his sloppiness was not the result of willfulness, carelessness or bad faith. In other words, mere incompetence would not bar recovery.

The word "only" was not used by the trial judge. It may be conceded, however, that the words used might, standing alone, be a misleading statement of the law. But they must be read in their context. In this connection it should be noted that the trial judge several times stated the law as it appears in the cases above cited and, on the question of skill, repeatedly used the phrases "good and workmanlike manner" or "proper and workmanlike manner" and the "skill of the trade," e. g., "This contract also includes within itself an obligation that the Mort Company will install these storm windows in a good, proper and workmanlike manner, and with that degree of care of ordinary and reasonable skill and care in the trade, in this community."

Appellant cites but one case in support of his contention—*Waugh v. Shunk,* 20 Pa. 130. The Court there said, at page 133: "The charge is to be taken altogether, and so taken, we think it teaches the doctrine that a man who holds himself out to the world as skilled in a particular branch of industry, and who undertakes to perform a piece of work in his appropriate art, is entitled to compensation, on a *quantum meruit,* whatever the consequences resulting from his imperfect performance, unless there have been gross negligence or wilful misconduct.

"To this doctrine we cannot subscribe. Where skill, as well as care is required in performing the undertaking, if the party purport to have skill in the business, and he undertakes for hire, he is bound to the exercise of due and ordinary skill in the employment of his art or business about it, or, in other words, to perform it in a workmanlike manner."

Returning to the charge under attack here, and reading it as a whole, it is manifest that the trial judge adequately expounded this aspect of the case. And certainly it cannot be said, again taking the charge as a whole, that he espoused the extreme "doctrine" to which the Court in the *Shunk* case said it could not "subscribe."

Excerpts from charges, of course, are not determinative of whether there has been fundamental error, but the charge must be read as a whole. "It is true that a few sentences might have been more carefully phrased but 'Even though isolated portions of the charge may be the subject of criticism, the charge must be considered as a whole, and if, when so considered, the issues are fairly put before the jury, the judgment will not be reversed': Giannone v. Reale, 333 Pa. 21, 24, 3 A. 2d 331": *Steele v. France,* 363 Pa. 165, 167, 69 A. 2d 368. See also *Simpson v. Montgomery Ward & Co.,*

165 Pa. Superior Ct. 408, 68 A. 2d 442, affirmed by the Supreme Court at 366 Pa. 3, 75 A. 2d 656, on the opinion of President Judge RHODES of this Court.

Judgment affirmed.